UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| TINA MARIE M.,[1] | : | Case No. 3:22-cv-139 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

Plaintiff Tina Marie M. brings this case challenging the Social Security Administration's denial of her applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), and the administrative record (Doc. #8).

**I.  Background**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1),

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff protectively applied for benefits in April 2017, alleging disability due to several impairments, including osteoporosis, vascular migraines, an anxiety disorder, and depression. (Doc. #8-6, *PageID* #447). After Plaintiff's applications were denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Louis Aliberti. On August 9, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (Doc. #8-3, *PageID* #s 206-25). The Appeals Council granted Plaintiff's request for review and remanded the matter for further proceedings. *Id.* at 226-32.

On remand, the claim was assigned to ALJ Kevin R. Barnes, who held a second hearing on October 27, 2020. (Doc. #8-2, *PageID* #s 97-121). Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] The ALJ reached the following main conclusions:

> Step 1: Plaintiff has not engaged in substantial gainful activity since November 1, 2014, the alleged onset date.
>
> Step 2: She has the following severe impairments: osteoporosis; chronic obstructive pulmonary disorder (COPD); depression; anxiety; arthritis; migraines; irritable bowel syndrome (IBS); social phobia; hepatitis B; lumbar degenerative disc disease; and degenerative joint disease of the left hand.

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

Step 3: Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … except never climb ladder[s], ropes, or scaffolds. Never crawl. Occasionally climb ramps and stairs. Occasionally balance, stoop, crouch and kneel. Avoid concentrated exposure to environmental irritants (e.g., fumes, odors, dust, and gas), poorly ventilated areas, and industrial chemicals. Avoid hazardous machinery and unprotected heights. Work is limited to simple, routine, and repetitive tasks, performed in a work environment free of fast paced production requirements, involving only simple, work-related decisions, with few, if any, work place changes. Only occasional interaction with the public and only occasional interaction with co-workers with no tandem tasks."

Plaintiff is unable to perform any past relevant work.

Step 5: Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.

(Doc. #8-2, *PageID* #s 79-90). Based on these findings, the ALJ concluded that Plaintiff has not been disabled since November 1, 2014. *Id.* at 90.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #8-2, *PageID* #s 76-90), Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #10), and Plaintiff's Reply (Doc. #11). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.    **Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r*

3

*of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III.    Discussion

In her Statement of Errors, Plaintiff raises one assignment of error, which is that the ALJ erred in his residual functional capacity ("RFC") determination by not accounting for her limitations in interacting with supervisors. (Doc. #9, *PageID*#s 732-37). The Commissioner maintains that the ALJ considered all of the evidence and accounted for all of Plaintiff's credible limitations. (Doc. #10, *PageID* #s 743-46).

#### A.    RFC Determination

An individual's RFC "is defined as the most [she] can still do despite the physical and mental limitations resulting from [her] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009). *See also* 20 C.F.R. § 404.1545(a). The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner"). And it is the ALJ who resolves conflicts in the medical evidence. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). Substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010) (Hogan, M.J.).

When determining the RFC, the ALJ is charged with evaluating several factors, including the medical evidence (not limited to medical opinion testimony) and the plaintiff's testimony. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)). The RFC assessment must be based on all the relevant evidence in her case file. 20 C.F.R. § 404.1545(a)(1). Since Plaintiff filed her application after March 27, 2017, it is governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c (2017).

In this case, Natalie A. Meyer, Psy.D., a state agency psychologist, examined Plaintiff on July 27, 2017. (Doc. #8-7, *PageID* #s 550-55). As part of her examination, Dr. Meyer interviewed Plaintiff and reviewed her partial disability report, which indicated that her medical conditions, including osteoporosis, vascular migraines, anxiety disorder, and depression, impact her ability to

complete activities of daily living. *Id*. at 550. Upon examination, Plaintiff presented as clean and neat in appearance with adequate grooming and hygiene. *Id*. at 552. She was cooperative with Dr. Meyer and appeared to persist to the best of her abilities in all the tasks. *Id*. Dr. Meyer also reported that Plaintiff had clear thought processes, normal speech quality, adequate receptive language skills, no indication of difficulty with word retrieval, and no abnormalities of mental content. *Id*. She did, however, have a "flat affect and depressed and withdrawn mood" along with fleeting eye contact. *Id*. at 553. She slumped in her chair throughout the evaluation and appeared irritable, making negative statements about herself as well as her situation. *Id*. Dr. Meyer described Plaintiff as alert, responsive, and oriented in all spheres with functioning in the low average range of intelligence. *Id*. She also noted that Plaintiff had adequate insight and judgment. *Id*.

Following the examination, Dr. Meyer diagnosed Plaintiff with unspecified depressive disorder and unspecified anxiety disorder. *Id*. Dr. Meyer opined that "[w]ith appropriate interventions, [Plaintiff's] prognosis is fair." *Id*. at 554. In response to the functional assessment directed at Plaintiff's ability to understand, remember, and carry out instructions, Dr. Meyer reported that Plaintiff had no difficulty following conversationally and responding to direct questions; was able to complete verbal reasoning tasks but struggled with math calculation tasks; and would be able to care for herself but reported low motivation due to symptoms of anxiety and depression. *Id*. As for her abilities to maintain attention and concentration as well as persistence and pace in performing both simple and multi-step tasks, Dr. Meyer stated that Plaintiff's "attention and concentrations skills are at least marginally adequate." *Id*. Here, she reiterated Plaintiff's performance during the tasks administered at the examination and also noted that

Plaintiff reported being slower at completing tasks recently and low motivation. *Id*. As a result, Dr. Meyer opined that Plaintiff's "[s]ymptoms of depression and anxiety may lead to decreased attention and concentration skills." *Id.*

In assessing Plaintiff's ability to respond appropriately to supervision and to coworkers in a work setting, Dr. Meyer described Plaintiff as "cooperative but appeared irritable and withdrawn." *Id*. She acknowledged Plaintiff's self-report of a productive work history and denial of difficulty interacting with others at work in the past. *Id*. However, she also pointed out that Plaintiff had recently been "more irritable and withdrawn[,]" though she did not seem to have difficulty with significant anger control. *Id*. at 554-55. Dr. Meyer also noted that Plaintiff "reported symptoms of anxiety and alluded to avoidant behavior." *Id*. at 555. Similarly, in addressing Plaintiff's ability to respond appropriately to work pressures in a work setting, Dr. Meyer again referred to Plaintiff's cooperative but withdrawn and irritable presentation as well as her lack of motivation. *Id*. As a result, Dr. Meyer opined that "[w]ork pressure may result in an increase in reported anxiety, discomfort, or other behavior which would impact [Plaintiff's] ability to cope appropriately." *Id*.

Upon review, the ALJ found Dr. Meyer's opinion to be "persuasive." (Doc. #8-2, *PageID* #85). In support, the ALJ pointed to Dr. Meyer's "medical specialty, specialized Social Security disability program knowledge, extensive experience performing independent, non-treating, objective medical examinations of Social Security disability claimants, and she personally examined [Plaintiff]." *Id*. He did, however, find that "Dr. Meyer did not express the limitations she found in vocationally relevant terms[]" or characterize Plaintiff's functional limitations using

7

the agency's terminology (*i.e*., mild, moderate, marked, or extreme) when discussing her limitations in the paragraph B criteria. *Id*. Despite this, the ALJ interpreted Dr. Meyer's findings to "indicate no more than moderate limitation in any one of the paragraph B criteria area[s]." *Id*. Specifically, the ALJ provided the following interpretation of Dr. Meyer's findings:

> Based upon her evaluation of [Plaintiff], Dr. Meyer's findings regarding [Plaintiff]'s ability to understand, remember, and carry out instructions have been interpreted to indicate no more than mild limitations in this functioning area. Her conclusions regarding [Plaintiff]'s ability to maintain attention, concentration, persistence, and pace for simple and multi-step tasks has been interpreted to indicate no more than moderate limitations in this functioning area. Moderate limitations could be interpreted from the conclusion drawn by Dr. Meyer regarding [Plaintiff]'s ability to respond appropriately to supervision and to workers in a work setting and in [Plaintiff]'s ability to respond appropriately to work pressures in a work setting.

*Id*.

According to the ALJ, these findings are "consistent with the other evidence of record." *Id*. In particular, he noted that the state agency reviewing psychologists also relied on Dr. Meyer's findings to support their conclusions regarding Plaintiff's mental functioning. *Id*. at 85-86. He also pointed out that there was "little evidence of any mental health treatment" and that Plaintiff's symptoms "appear[ed] to be well controlled with medication." *Id*. at 86.

State agency reviewing psychologists also provided their opinions on Plaintiff's mental functional limitations. In August 2017, Jennifer Swain, Psy.D., reviewed Plaintiff's mental health records and determined that Plaintiff's mental impairments resulted in her having a mild impairment in her ability to understand, remember, and apply information and a moderate limitation in each of the remaining areas of mental functioning, including in the ability to interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. (Doc. #8-3,

8

*PageID* #156). Here, Dr. Swain opined that Plaintiff's moderate limitation in her ability to interact with others would restrict her to "tasks that do not require more than superficial contact with others." *Id*. at 159. As for Plaintiff's moderate limitation in her ability to concentrate, persist, or maintain pace, Dr. Swain provided that Plaintiff could perform "simple, repetitive, one to two step tasks." *Id*. Finally, in addressing Plaintiff's moderate limitation in her ability to adapt or manage herself, Dr. Swain stated that she should be limited to "perform[ing] tasks that require infrequent changes, no strict production quotas, and a static work environment." *Id*.

On reconsideration, state agency psychologist, Patricia Kirwin, Ph.D., reviewed Plaintiff's mental health records and likewise found that Plaintiff was mildly limited in her ability to understand, remember, or apply information, but had moderate limitations in all other mental functional areas. *Id*. at 183-84. As a result, Dr. Kirwin also opined that Plaintiff should be limited to "tasks that do not require more than superficial contact with others." *Id*. at 187. In terms of Plaintiff's moderate limitation in her ability to concentrate, persist, and maintain pace, Dr. Kirwin found that Plaintiff retained the ability "to perform 1-4 step tasks [with] no high pace or high production quotas." *Id*. at 186. Finally, Dr. Kirwin opined that Plaintiff's moderate limitation in her ability to adapt or manage herself would limit her "to complet[ing] tasks in an environment in which changes are occasional and explained in advance." *Id.* at 187.

The ALJ also found the opinions of the Dr. Swain and Dr. Kirwin to be "persuasive" and credited their "medical specialties, Social Security disability programs expertise and extensive experience evaluating Social Security disability cases." (Doc. #8-2, *PageID* #s 84-85). He further noted that, in formulating their opinions, Drs. Swain and Kirwin relied on Dr. Meyer's evaluation

9

findings and that their opinions were "consistent with her evaluation and conclusions" as well as the other evidence of record. *Id*. at 85.

Notwithstanding these findings, the ALJ disagreed with these psychologists' opinion that Plaintiff be limited to superficial interactions, stating that "superficial is not a vocationally relevant term and is found to be somewhat vague." *Id*. Instead, the ALJ reasoned that "more adequate depict[ion]" of Plaintiff's limitations in her ability to interact with others would be to restrict her to "no more than occasional interaction with the public and co-workers without tandem tasks." According to the ALJ, this change was still "consistent with the findings of these reviewers" as well as "[t]he other evidence of record[.]" *Id*. Specifically, the ALJ relied on the fact that "[Plaintiff] is noted throughout the record to be cooperative and pleasant with treating and evaluating staff." *Id*. Thus, he reasoned that "limiting her to no more than occasional contact addresses her complaints of not liking to be around strangers." *Id.* The ALJ also explained that he had accommodated Plaintiff's limitations with handling work-related stress by restricting her to "an environment with few if any workplace changes and should be required to make only simple work[-]related decisions." *Id*. In concluding, the ALJ stated that he slightly modified the opinions of Drs. Swain and Kirwin when formulating the RFC so as "more accurately depict [Plaintiff's] actual functional limitations[.]" *Id*.

As noted above, Plaintiff's assignment of error rests with the ALJ's formulation of her mental RFC that excluded certain limitations, despite attributing persuasive weight to the psychologists who recommended these limitations (*See* Doc. #9, *PageID* #s 732-37). According to Plaintiff, the ALJ found the opinions of Drs. Meyer, Swain, and Kirwin persuasive but failed to

incorporate their restrictions regarding Plaintiff's ability to interact with others, most significantly, supervisors. *Id*. Plaintiff's argument is well-taken.

While an ALJ is under no obligation to mirror a medical opinion verbatim, he does have an obligation to "meaningfully explain why certain limitations are not included in the RFC determination, especially when such limitations are set forth in opinions the ALJ weighs favorably." *Ryan v. Comm'r of Soc. Sec.*, 307 F. Supp. 3d 797, 803 (S.D. Ohio 2017) (Newman, M.J.), *report and recommendation adopted*, No. 3:16-CV-124, 2017 WL 3412107 (S.D. Ohio Aug. 8, 2017) (Rice, D.J.); *see also*, *Queen v. Comm'r of Soc. Sec.*, No. 2:16-cv-1082, 2017 WL 6523296, at *9–10 (S.D. Ohio Dec. 21, 2017) (Preston Deavers, M.J.) (remanding where the ALJ "failed to include at least one limitation" from an opinion he had assigned great weight without explaining the omission). In this case, Drs. Swain and Kirwin both opined that Plaintiff should be limited to "tasks that do not require more than superficial contact with others." (Doc. #8-3, *PageID* #s 159, 187). The ALJ, in turn, found each of these opinions to be persuasive, but declined to use the recommended language in formulating the RFC because he found that "superficial is not a vocationally relevant term and is found to be somewhat vague." (Doc. #8-2, *PageID* #85). Instead, the ALJ reasoned that "more adequate depict[ion]" of Plaintiff's limitations in her ability to interact with others would be to restrict her to "no more than occasional interaction with the public and co-workers without tandem tasks." *Id*.

Contrary to the ALJ's statement, "superficial" contact is a well-recognized work-related limitation. Indeed, courts have routinely recognized the distinction between limiting the quantity of time spent with an individual with the limitation relating to the quality of the interactions—

including a limitation to "superficial" contact. *See, e.g., Corey v. Comm'r Soc. Sec.*, No. 2:18-cv-1219, 2019 WL 3226945, at *4 (S.D. Ohio July 17, 2019) (Vascura, M.J.) ("[R]eversal is warranted because the ALJ assigned significant weight to [the medical] opinions, but failed to include limitations for 'superficial' interactions."); *Lindsey v. Comm'r of Soc. Sec.*, No. 2:18-CV-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018) (Vascura, M.J.), *report and recommendation adopted*, No. 2:18-CV-018, 2019 WL 133177 (S.D. Ohio Jan. 8, 2019) (Sargus, D.J.) ("'Occasional contact' goes to the quantity of time spent with [ ] individuals, whereas 'superficial contact' goes to the quality of the interactions." (emphasis added)) (quoting *Hurley v. Berryhill*, No. 1:17-cv-421-TLS, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018)).

Accordingly, the ALJ's position that such a limitation, as reflected in the opinions of Drs. Swain and Kirwin, is "vague" and can be accommodated by a restriction to "occasional" contact with others is unavailing and supports remanding this case. *See Hurley v. Berryhill*, No. 1:17-CV-421, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018) (holding that "occasional" and "superficial" are not interchangeable terms and finding that the ALJ erred in making no attempt to explain the basis of his decision to limit the plaintiff to occasional rather than superficial interactions) (internal citation omitted); *Cote v. Colvin*, No. 16-cv-57, 2017 WL 448617, at *7 (W.D. Wis. Feb. 2, 2017) (reversing and remanding where "[t]he ALJ did not explain his reasons for only limiting the quantity and not the quality or duration of plaintiff's social interaction, even though several of the physicians whom he credited made clear that plaintiff's difficulties related to the quality of the interaction.").

Further, the Commissioner's argument that the ALJ accommodated the quality aspect of the limitation recommended by Drs. Swain and Kirwin by restricting Plaintiff from engaging in tandem tasks with co-workers is insufficient because the ALJ provided no explanation as to why he took such a narrow view of their recommendation of superficial contact and, more so, why he only applied it to Plaintiff's interactions with co-workers. Notably, in providing their recommendations, Drs. Swain and Kirwin found that Plaintiff's social limitations would cause her limitations in her interactions with all "others." (Doc. #8-3, *PageID* #s 159, 187). Thus, it is unclear why the ALJ decided to depart from this recommendation and find that the quality of Plaintiff's interactions only needed to be limited in the case of co-workers.

It is even more unclear why the ALJ decided to completely exclude limitations related to Plaintiff's contact with supervisors. The absence of any explanation on this point is particularly confusing, given the interpretation and weight that the ALJ attributed not only to Drs. Swain and Kirwin's opinions, but also to Dr. Meyer's opinion. Specifically, the ALJ interpreted Dr. Meyer's opinion as finding that Plaintiff was moderately limited in her "ability to respond appropriately to supervision and to workers in a work setting[.]" (Doc. #8-2, *PageID* #85). In turn, the ALJ found Dr. Meyer's opinion to be persuasive, but failed to provide any explanation as to why he did not incorporate her findings related to Plaintiff's limitations in responding to supervisors into the RFC. The absence of any explanation requires remand. *See, e.g., Natalie C. v. Comm'r of Soc. Sec.*, No. 1:21-CV-145, 2022 WL 2651667, at *4 (S.D. Ohio July 8, 2022) (Bowman, M.J.) (finding remand appropriate where the ALJ erred by failing to explain why he did not incorporate the limitations of a medical opinion he found to be persuasive into the RFC); *Barker v. Astrue*, No. 5:09 CV 1171,

2010 WL 2710520, at *5–6 (N.D. Ohio July 7, 2010) (finding that the ALJ erred by failing to include in plaintiff's "RFC the prior ALJ's findings, as adopted by the state agency physicians, that Plaintiff have no interaction with the public and only superficial interaction with co-workers and supervisors" where the ALJ only "limited Plaintiff to no more than occasional interaction with the public (as opposed to no interaction with the public, as in ALJ Hafer's assessment), and he made no mention of whether and to what extent Plaintiff can interact with co-workers and supervisors").

In short, remand is warranted in this case because the ALJ found the opinions of Drs. Swain, Kirwin, and Meyer to be persuasive but failed to include the specific social interaction limitations they recommended or to offer an adequate explanation as to why he declined to include these limitations. Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.

### B. Remand

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

14

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits.  *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994).  The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking.  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking.  However, Plaintiff is entitled to have this case remanded to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above.  On remand, the ALJ is directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Statement of Errors (Doc. #9) is **GRANTED;**

2. The Commissioner's non-disability finding is **VACATED**;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

5. The case is terminated on the Court's docket.

August 17, 2023

*s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge